**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **GIOVONNI MASON,** | CASE NO. 3:25 CV 864 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **VERIZON WIRELESS SERVICES, LLC, et al.,** | |
| | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

### INTRODUCTION

Currently pending in this suit brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, is Defendant Verizon Wireless Services, LLC's[1] Motion to Compel Arbitration and Stay Proceedings, or alternatively, for an extension of time in which to respond to the Complaint. (Doc. 16). Plaintiff Giovonni Mason opposes (Doc. 17), and Verizon replies (Doc. 21). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons set forth below, Verizon's motion is granted.

### BACKGROUND

According to Plaintiff's Complaint, he entered into a retail installment agreement for telecommunications services and devices financed through Verizon in May 2023. (Doc. 1, at 5). According to documentation provided by Verizon in support of the instant motion, Plaintiff contracted for both cellular telecommunications services as well as the purchase of three new

---

1. In its motion, Defendant represents it was incorrectly identified as "Verizon Wireless Services, LLC", but would properly be named as "Cellco Partnership (d/b/a Verizon Wireless)". (Doc. 16, at 1). The Court uses "Verizon" herein for simplicity.

iPhones through three retail installment agreements. (Docs. 16-2 through 16-7) (retail installment contracts and consent to terms). The total value of the three iPhones was $3,299.97 plus taxes. *See* Docs. 16-2, 16-4, 16-6 (listing total sale price of each iPhone as $1,099.99). Each was financed on a 36-month installment plan. *See id.* The service plans were not under an installment contract; it was a month-to-month arrangement. (Doc. 16-1, at 2).

Verizon suspended Plaintiff's account on June 21, 2023, and ultimately disconnected it on August 5, 2023, for nonpayment. *Id.* Plaintiff never made a payment on his account. *See* Doc. 16-8; *see also* Doc. 16-1, at 2. As of September 6, 2023, Plaintiff owed Verizon $3,829.03. (Doc. 16-8). Under the terms of the retail installment contracts, the full amount was due in the event of customer default. *See* Doc. 16-2, at 3; Doc. 16-4, at 3; Doc. 16-6, at 3 (paragraph entitled "DEFAULT AND REMEDIES").

Plaintiff's account was governed by the My Verizon Wireless Customer Agreement. *See* Doc. 16-1, at 2. He was emailed a copy of the November 15, 2022, agreement at the time he opened his account; the agreement was updated shortly after Plaintiff opened his account on May 16, 2023. *Id.*; Doc. 16-13 (2023 version); Doc. 16-14 (November 2022 version). The agreement states that "[b]y using the Service you are agreeing to every provision of this Agreement, any applicable terms and conditions for your Service, and the terms described in the Important Plan Information, whether or not you have read them. This Agreement also applies to all lines on your account and anyone who uses your Service." (Doc. 16-14, at 1). All three service lines were used between May and August 2023 to make numerous phone calls. *See* Docs. 16-10 through 16-12.

The arbitration provision of the Customer Agreement states, in relevant part[2]:

---

2. Both the 2022 and 2023 versions of the agreement contain the same arbitration provisions at issue here. (Doc. 16-13, at 6-8; Doc. 16-14, at 6-8).

**HOW DO I RESOLVE DISPUTES WITH VERIZON?**
WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.

YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS DISCUSSED BELOW. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES IN ARBITRATION MAY BE DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD, SUBJECT TO THE LIMITS ON ARBITRATOR AUTHORITY SET FORTH BELOW. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. THE SAME DEFENSES ARE ALSO AVAILABLE TO BOTH PARTIES AS WOULD BE AVAILABLE IN COURT INCLUDING ANY APPLICABLE STATUTE OF LIMITATIONS. WE BOTH ALSO AGREE THAT:

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES OR AS SPECIFICALLY NOTED BELOW, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT, INCLUDING THE VALIDITY, ENFORCEABILITY, OR SCOPE OF ANY PORTION OF THIS AGREEMENT (INCLUDING THE AGREEMENT TO ARBITRATE), OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US, OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES, OR FROM OUR EFFORTS TO COLLECT AMOUNTS YOU MAY OWE US FOR SUCH PRODUCTS OR SERVICES, INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") AS EXPLAINED BELOW IN PARAGRAPH 2. YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU. THIS AGREEMENT TO ARBITRATE CONTINUES TO APPLY EVEN AFTER YOU HAVE STOPPED RECEIVING SERVICE FROM US.

(Doc. 16-14, at 6). The retail installment contracts also each provide:

**DEVICE PAYMENT AGREEMENT TERMS**
DEVICE PAYMENT AGREEMENT. THIS DEVICE PAYMENT AGREEMENT REQUIRES THAT YOU MAINTAIN SERVICE WITH VERIZON WIRELESS UNDER YOUR CUSTOMER AGREEMENT. ALTHOUGH YOUR CUSTOMER AGREEMENT IS A SEPARATE

3

> DOCUMENT, EXCEPT AS PROHIBITED BY APPLICABLE LAW, THE WAIVERS AND LIMITATIONS OF LIABILITY, DISCLAIMER OF WARRANTIES, AND OTHER PROVISIONS OF YOUR CUSTOMER AGREEMENT ARE INCORPORATED BY THIS REFERENCE IN THIS AGREEMENT, AND SHALL SURVIVE TERMINATION OF YOUR CUSTOMER AGREEMENT. ADDITIONALLY, ANY DISPUTES UNDER THIS DEVICE PAYMENT AGREEMENT SHALL BE RESOLVED IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROVISIONS IN YOUR CUSTOMER AGREEMENT UNDER THE HEADING: HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS, WHICH TERMS ARE INCORPORATED BY REFERENCE. SPECIFICALLY, YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE ALL DISPUTES UNDER THIS DEVICE PAYMENT AGREEMENT ONLY BY ARBITRATION OR SMALL CLAIMS COURT AND YOU WAIVE ANY RIGHT TO A JUDGE OR JURY IN ANY ARBITRATION.

(Doc. 16-2, at 2; Doc. 16-4, at 2; Doc. 16-6, at 2).

In the instant case, filed on April 30, 2025, Plaintiff brings claims under the FCRA against Verizon and others. *See* Doc. 1. He contends Verizon "violated his rights under the FCRA by failing to have in place and/or follow reasonable procedures" which led to derogatory information on his credit reports. *Id.* at 3. He cites 15 U.S.C. § 1681s-2(b) for the source of his claims against Verizon. *Id.* at 14-24. In essence, he contends Verizon provided incorrect information to the credit reporting agencies by continuing to report a debt as delinquent after Verizon had notified the IRS it was discontinuing collection. *See id.* at 5-6.

### STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that an arbitration clause in a contract governing a "transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA further mandates that when the Court is "satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

4

The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). A central purpose of the FAA is "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA requires courts to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

Arbitration clauses are subject to the same defenses or bars as other contract provisions. 9 U.S.C. § 2. The Court must ascertain whether the parties agreed to arbitrate the dispute at issue. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). A party cannot be required to arbitrate any dispute if the party has not agreed to do so. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). The FAA does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (citing *Gilmer*, 500 U.S. at 26). To meet this burden, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate", and such a showing "mirrors that to withstand summary judgment in a civil suit." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Courts may consider both the pleadings and additional evidence submitted by the parties and view all facts and inferences in the light most favorable to the nonmoving party. *See*

*id.* The Sixth Circuit "has long held that '[m]ere conclusory and unsupported allegations, rooted in speculation, do not meet that burden.'" *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (quoting *Bryant v. Kentucky,* 490 F.2d 1273, 1274 (6th Cir. 1974) (per curiam)). In evaluating whether to compel arbitration, a Court "has four tasks":

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

### DISCUSSION

Verizon moves to compel arbitration of Plaintiff's claims pursuant to an arbitration agreement. (Doc. 16). Verizon supports its motion with documentation authenticated by an affidavit of Joseph Ninete, a Senior Analyst with Verizon Customer Group. (Doc. 16-1). Plaintiff opposes on two grounds. First, he asserts that his FCRA claims "arise solely from statutory duties imposed by Congress, not from the Verizon customer agreement", and therefore are not covered thereby. (Doc. 17, at 1). Second, he argues that compelling arbitration here "would deny Plaintiff an opportunity to vindicate rights created by the FCRA, because arbitration procedures restrict discovery essential to proving statutory violations." *Id.* at 1-2. Plaintiff further moves to strike the Ninete affidavit. *Id.* at 7.

For the reasons set forth below, the Court denies Plaintiff's motion to strike and grants Verizon's motion to compel arbitration and stay the case as against it.[3]

---

3. Verizon's alternative motion for an extension of time in which to file an answer to Plaintiff's complaint is therefore denied as moot.

Motion to Strike

Plaintiff moves to strike the Ninete Affidavit, arguing: (1) it contains "[n]o oath or affirmation"; (2) it "[f]ails to meet 28 U.S.C. § 1746 requirements"; (3) it is based on hearsay and not personal knowledge; and (4) it contains improper legal conclusions that Verizon complied with the FCRA. (Doc. 17, at 7). The Court, however, agrees with Defendant that Plaintiff has not identified a basis to strike. First, the Affidavit begins with the statement: "Now comes the Affiant, Joseph Ninete, being duly sworn according to law[.]" (Doc. 16-1, at 1). Second, 28 U.S.C. § 1746 is inapplicable here. *See, e.g.*, *Menoken v. Weichert*, 2019 WL 4418757, at *5 (D.D.C.) ("28 U.S.C. § 1746 . . . sets forth circumstances in which unsworn declarations may be treated as sworn testimony. But, each of these affidavits was made under oath, and thus, they constitute sworn statements, and § 1746 does not apply.") (citation omitted); *Turner v. New Jersey State Police*, 2017 WL 1190917, *3 (D.N.J.) (finding 28 U.S.C. § 1746 does not apply to a sworn affidavit). Third, the affidavit states Ninete has "personal knowledge of the facts set forth below based on [his] review of records and documents regularly maintained in the ordinary course of business[.]" (Doc. 16-1, at 1). Fourth and finally, contrary to Plaintiff's contentions, the Affidavit contains no "[i]mproper legal conclusions" or "[a]ssertions that Verizon complied with the FCRA[.]" (Doc. 17, at 7).

Plaintiff's motion to strike the affidavit is therefore denied.

Arbitration Agreement

At the outset, the Court notes that Plaintiff does not dispute the existence of the arbitration agreement nor his consent thereto. Instead, he disputes only whether his FCRA claim falls within the agreement. The Court addresses each of his arguments in turn.

Plaintiff first argues his claims are not encompassed by the arbitration clause because they are independent of the customer contract. *Id.* at 3. Specifically, he contends his claims are based on Verizon's "continued furnishing of inaccurate credit information", which is "post-cancellation conduct." *Id.*; *see also id.* at 4 ("Plaintiff's claims are statutory in nature, arise after contract termination, and involve duties that exist regardless of the contract.").

Here, the arbitration provision states it covers "any dispute that in any way relates to or arises out of this agreement, including the validity, enforceability, or scope of any portion of this agreement (including the agreement to arbitrate)" and that the "agreement to arbitrate continues to apply even after you have stopped receiving service from us." (Doc. 16-14, at 6) (capitalization altered). Although Plaintiff is correct that his claims are not directly based on the terms of either his service or his retail installment contract, the Court finds the arbitration provision's broad language ("in any way relates to") sufficient to sweep in Plaintiff's FCRA claims. *See, e.g.*, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 & n.16 (1983) (explaining the phrase "relates to", when employed in its normal sense, has broad reach and means anything that "has a connection with or reference to" the intended object). Moreover, to the extent there is any ambiguity, the same provision specifies that the "scope of any portion of this agreement (including the agreement to arbitrate)" will be resolved by the arbitrator. (Doc. 16-14, at 6). The conclusion that this dispute is arbitrable is further supported by the principle that any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. *See Fazio*, 340 F.3d at 392 (citing *Moses*, 460 U.S. at 24-25).

Plaintiff secondly argues his FCRA claims are not arbitrable because such an arbitration would limit his ability to pursue his statutory remedies. As noted above, one of the factors to be considered in evaluating an arbitration agreement's enforceability when federal claims are

asserted is "whether Congress intended those claims to be nonarbitrable[.]" *Stout*, 228 F.3d at 714. But the burden is on Plaintiff "to show that Congress intended to preclude a waiver of a judicial forum for [FCRA] claims." *Gilmer*, 500 U.S. at 26 ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."). The Court finds Plaintiff has not done so.

This Court has previously compelled arbitration of FCRA claims. *See Sterling v. Meade & Assocs.*, 2025 WL 1295147, at *4 (N.D. Ohio). And other district courts within the Sixth Circuit have held "[t]here is no indication that Congress intended to preclude the arbitration of FCRA claims[.]" *McMahan v. Byrider Sales of Indiana S, LLC*, 2017 WL 4077013, at *4 (W.D. Ky.); *see also Burton v. Equifax Info. Servs., LLC*, 2021 WL 5500773, at *3 (E.D. Tenn.) ("The language of the FCRA does not demonstrate a congressional intent to preclude arbitration of claims for violations under the Act. Moreover, courts within the Sixth Circuit have held that FCRA claims are arbitrable.") (citation omitted). And although Plaintiff argues the contrary, he presents no caselaw supporting his position. The Court finds Plaintiff has not demonstrated that Congress intended FCRA claims to be nonarbitrable.

The Court therefore finds the parties here agreed to arbitrate, the scope of the arbitration provision encompasses Plaintiff's FCRA claims, and Congress did not intend those claims to be nonarbitrable. As such, Verizon's motion to compel arbitration is granted.

Motion to Stay

Verizon also moves to stay this matter as against it pending arbitration. (Doc. 16, at 8). The Court agrees a stay is warranted. In *Smith v. Spizzirri*, 601 U.S. 472 (2024), the Supreme Court considered § 3 of the FAA, entitled "Stay of proceedings where issue therein referable to arbitration," which provides that, when any issue in a suit is subject to arbitration, the court

"shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The *Spizzirri* Court announced: "Just as 'shall' means 'shall,' 'stay' means 'stay.'" 601 U.S. at 476.

The Court, however, finds it unnecessary to stay the entire proceeding. This matter will be stayed as to Plaintiff's claims against Verizon, but Plaintiff's claims against remaining Defendants Experian Information Solutions, Inc. and TransUnion, LLC will proceed.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion to Strike the Affidavit of Joseph Ninete (Doc. 17, at 7) be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that Verizon Wireless Services, LLC's Motion to Compel Arbitration (Doc. 16, at 3-8) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Verizon Wireless Services, LLC's Motion to Stay (Doc. 16, at 8), be and the same hereby is, GRANTED. Plaintiff's claims against Verizon Wireless Services, LLC shall be STAYED and the parties shall submit these claims to arbitration.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: October 2, 2025